



JAMES D. WILLIAMS
REG. NO. 52171-424
USP CANAAN
U.S. PENITENTIARY
P.O. BOX 300
WAYMART, PA 18472

November 25, 2025

Mr. Thomas G. Bruton
Clerk of Court
U. S. District Court
Northern District of Illinois
Eastern Division
219 South Dearborn Street
Chicago, IL 60604

    RE:   *Williams v. United States*
           Civil No. 1:25-cv-08476
           Crim No. 1:18-cr-00339-1

Dear Mr. Bruton:

    Enclosed please find and accept for filing Movant's Supplemental Memorandum of Law in Support of Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Please submit this document to the Court.

    Thank you for your assistance in this matter.

                    Sincerely,

                    JAMES D. WILLIAMS
                    Appearing *Pro Se*

*Encl. as noted*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES D. WILLIAMS, | § | |
| | § | |
| Movant, | § | |
| | § | |
| v. | § | Civil No. 1:25-cv-08476 |
| | § | Crim No. 1:18-cr-00339-1 |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECTSENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, JAMES D. WILLIAMS ("Williams"), appearing *pro se,* and

in support of this memorandum would show as follows:

## I. STATEMENT OF THE CASE

### A.    Procedural Background

On November 13, 2019, a grand jury sitting in the United States District Court

for the Northern District of Illinois, Eastern Division, returned a twelve (12) Count

Third Superseding Indictment charging Williams and Jessica Sweeney Williams

("Jessica"). See Doc. 124.[1] Count 1sss charged Williams with Conspiracy to Defraud

---

[1]    "Doc." refers to the Docket Report in the United States District Court for the Northern District of Illinois, Eastern Division in Criminal No. 1:19-cr-00548-1, which is immediately followed by the Docket Entry Number. "CvDoc." refers to the Docket Report in the United States District

the United States, in violation of 18 U.S.C. § 371. *Id.* Counts 2sss, 4sss, 6sss charged

Williams with Bank Robbery by Force or Violence, in violation of 18 U.S.C. §§

2113(a) and 2. *Id.* Counts 3sss, 5sss, 7sss charged Williams with Using, Carrying, and

Brandishing a Firearm During and In Relation to A Crime of Violence, in violation of

18 U.S.C. §§ 924(c)(1)(A)(ii) and (iii). *Id.* Count 8sss charged Williams with Felon in

Possession of A Firearm, in violation of 18 U.S.C. § 922(g)(1). *Id.* Count 9sss charged

Williams with Conspiracy to Defraud the United States, in violation of 18 U.S.C. §

371. *Id.* The Third Superseding Indictment also contained a Forfeiture Allegations,

pursuant to 18 U.S.C. § 924(d)(1), 21 U.S.C. § 853(p) and 28 U.S.C. § 2461(c). *Id.*

On March 7, 2023, a five-day jury trial commenced. See Docs. 319, 320, 323,

325, 330, 333.

On March 15, 2023, the grand jury returned a guilty verdict as to Williams on

Counts 1sss through 9sss of the Third Superseding Indictment. See Doc. 337.

On November 14, 2023, Williams was sentenced to a total term of 476 months'

imprisonment, 3 years of Supervised Release, $149,071 Restitution, and a Mandatory

Special Assessment Fee of $900. See Docs. 380, 383.

On November 28, 2023, Williams timely filed a Notice of Appeal. See Doc. 386.

---

Court for the Northern District of Illinois, Eastern Division in Civil No. 1:25-cv-08476, which is
immediately followed by the Docket Entry Number.

On July 23, 2024, Williams filed a Motion to Voluntarily Dismiss Appeal. See ROA 13.[2] On the same day, the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit") issued an Order dismissing Williams' appeal pursuant to F.R.A.P. 42(b) and C.R. 51(f). See ROA 14.

On July 23, 2025, Williams filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"),. See CvDocs. 1-3.

On October 2, 2025, the United States filed a motion for an extension of time to respond and a motion requesting the Court to order the Defendant to supplement his § 2255 motion (Dkt. 6).

On October 6, 2025, issued an Order granting the Government's motion. The Court ordered that: Williams shall file his supplement to his § 2255 Motion on or before November 7, 2025; and the Government shall file its response on or before December 8, 2025. See CvDoc. 7.

**B.**     **Statement of the Facts**

1.     Offense Conduct

Between May 11 and May 31, 2018, Williams committed three violent,

---

[2] "ROA." refers to the record on appeal in No. 23-3284, which is immediately followed by the page number.

armed bank robberies with his co-defendant Alexis Handelman ("Handelman"). Williams was armed with an AK-47-style rifle, purchased by co-defendant Jessica, in each of the robberies. It was captured on surveillance video, Williams pointed that rifle at bank employees and customers, while shouting instructions at those victims.

On May 1, 2018, Williams dispatched Jessica to purchase ammunition for an AK-47-style rifle she had purchased in February 2018. Ten days later, on May 11, defendant and Handelman robbed the Old Second National Bank, in Ottawa. Williams pointed the AK-47 at bank employees during the robbery, as he ordered them to give Handelman money. The two took $9,365 from the bank. The pair fled the bank in a car that Williams had borrowed from his sister. On his way out of Ottawa, Williams called his sister and asked her to report the car stolen.

Ten days after the Ottawa robbery, on May 21, Williams and Handelman robbed the Norstates Bank in Gurnee. Once again, Williams pointed the AK-47 at bank employees while demanding them to give money to Handelman. Williams and Handelman stole $5,159 from the Norstates Bank.

After the second robbery, Williams and Handelman attempted to secure a handgun for the next robbery. He eventually went to a gun shop with Jessica, where the pair purchased two pistols. Williams used one of those pistols in the third, most violent, robbery.

On May 31, Williams and Handelman entered the Aurora Bank & Trust. Unsatisfied with the money taken from the two drawers in use at the time, Williams demanded that the tellers open the drive-through drawer. Producing the pistol he had purchased four days earlier, defendant ordered three bank employees, two women and a man, into the bank's vault room. Flustered, the tellers were unable to immediately open the vault. In response, Williams placed the barrel of his loaded gun against the male teller's head. Williams said that the tellers were taking too long. Williams then raised the gun and fired a shot into the ceiling. The other tellers, in the moment, believed that Williams had killed their colleague. After the tellers opened the vault drawer, Williams and Handelman stole

4

$134,547 from the bank.

See Doc. 374 at 1-3.

### 2. Trial Proceeding

On March 6, 2023, a five-day jury trial commenced before Honorable John Robert Blakey. See Doc. 320. Over the course of four days, the government presented evidence and testimony from 31 witnesses. The government rested its case in chief on March 14, 2023. Williams did not present evidence. *Id.* On March 15, 2023, the trial jury found Williams guilty on Counts 1sss through 9sss of the Third Superseding Indictment. See Doc. 337.

### 3. Sentencing and Appellate Proceedings

On November 14, 2023, a Sentencing Hearing was held before Honorable John Robert Blakey. See Doc. 380. This Court sentenced Williams to 60 months as to Counts 1sss and 9sss, 188 months as to Counts 2sss, 4sss, 6sss, 120 months as to Count 8sss, to run concurrently with each other; 84 months as to Counts 3sss and 5sss, 120 months as to Count 7sss, to run consecutively to all counts; for a total term of 476 months' of imprisonment. See Doc. 380. It is followed by 3 years' Supervised Release as to Counts 1sss-9sss of the Third Superseding Indictment, to run concurrently with each other. See Doc. 383. This Court also ordered Williams to pay a $149,071 Restitution and a Mandatory Special Assessment Fee of $900. *Id.*

On November 28, 2023, Williams timely filed a Notice of Appeal. See Doc. 386.

On July 23, 2024, Williams filed a Motion to Voluntarily Dismiss Appeal. See ROA 13. On the same day, the Seventh Circuit issued an Order dismissing Williams' appeal pursuant to F.R.A.P. 42(b) and C.R. 51(f). See ROA 14

**II.** **Pretrial Counsel's Failure To: (1) Communicate with Williams and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; and (2) File Any Substantive Pretrial Motions and An Adequate and Independent Pretrial Investigation Deprived Williams of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.**

1. Failure to Communicate with Williams and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty Versus Proceeding to Trial

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel, including the duty to provide meaningful communication and competent legal guidance at all critical stages of the proceedings, particularly when deciding whether to plead guilty or go to trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). This constitutional mandate is reinforced by the Illinois Rules of Professional Conduct, Rule 4-1.4, which requires that counsel:

a. Promptly inform the client of any matter requiring informed consent;

b. Reasonably consult with the client about the means to achieve the client's objectives;

6

      c.     Keep the client reasonably informed about case status;

      d.     Promptly comply with reasonable requests for information; and

      e.     Explain matters sufficiently to enable the client to make informed decisions regarding the representation.

These ethical duties are not aspirational; they form the practical baseline for constitutionally effective assistance. The Supreme Court held in *Strickland* that ineffective assistance exists where: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the result would have been different. *Id.* at 687–88.

The Seventh Circuit has consistently applied this standard to failures in client communication and plea guidance. In *United States v. Lathrop*, 634 F.3d 931, 938 (7th Cir. 2011), the court found ineffective assistance where counsel failed to consult the defendant on critical decisions, including the right to testify. Likewise, in *Brock-Miller v. United States*, 887 F.3d 298, 307 (7th Cir. 2018), the court held that counsel's failure to advise the defendant about a plea offer and trial strategy deprived the defendant of the opportunity to make an informed decision—conduct that rendered counsel's assistance constitutionally deficient.

In this case, Attorney Hallie M. Bezner ("Bezner"), who represented Williams throughout the pretrial and trial proceedings, wholly failed to fulfill her constitutional and professional obligations. Bezner met with Williams in person only twice, conducted

7

just two phone calls, and held six video visits over the entire course of representation—including the post-trial phase. This meager communication, on its face, falls short of the objective reasonableness standard established in *Strickland*.

Moreover, Bezner never meaningfully discussed trial strategy with Williams, including whether to call witnesses or whether Williams should testify in his own defense. In fact, it was not until the conclusion of the government's case at trial that the issue of testifying was even addressed—prompting the court to call a recess so Bezner could finally consult with her client. Such last-minute advisement is constitutionally inadequate. See *United States v. Arocho*, 305 F.3d 627, 638 (7th Cir. 2002) (holding that the right to testify is personal to the defendant and must be knowingly and voluntarily waived following proper consultation with counsel).

Despite Williams expressing a clear desire to testify, Bezner did not provide him with any preparation for direct or cross-examination. The Seventh Circuit has recognized that counsel's duties include preparing the client to meaningfully participate in trial. See *United States v. Grimes*, 899 F.3d 622, 625 (7th Cir. 2018) (finding ineffective assistance where counsel failed to prepare the defendant to testify).

These omissions are not technicalities; they are failures that go to the heart of the adversarial process. The lack of trial strategy consultation, failure to prepare Williams for testimony, and superficial client communication constitute serious deficiencies

8

under *Strickland*. The cumulative impact deprived Williams of the ability to make informed decisions at critical stages of his defense and rendered the proceedings fundamentally unfair.

The Sixth Amendment does not demand perfection—but it does require meaningful, diligent, and constitutionally adequate advocacy. That standard requires more than perfunctory meetings and generic advice; it requires counsel to ensure that the client understands his options, rights, and the risks associated with each course of action. Here, counsel's failure to do so undermined Williams' right to actively and intelligently participate in his defense and prejudiced the outcome of his case.

2. <u>Failure to File Any Substantive Pretrial Motions and An Adequate and Independent Pretrial Investigation</u>

Attorney Bezner rendered ineffective assistance by failing to file any substantive pretrial motions that could have tested the strength of the government's case-in-chief. Most notably, she neglected to move for the suppression of key evidence, including cellular phones that were potentially seized without a valid warrant, in violation of Williams' Fourth Amendment rights. Specifically, she failed to challenge the search of a damaged Samsung Galaxy S7 recovered from a locked and parked rental vehicle—despite clear grounds to contest the legality of the search.

In *United States v. Quinney*, 583 F.3d 891 (6th Cir. 2009), the Sixth Circuit

examined the admissibility of evidence seized without a warrant and statements obtained without *Miranda* warnings, focusing on the limits of the "inevitable discovery" doctrine. Similarly, in *United States v. Edwards*, 242 F.3d 928 (10th Cir. 2001), the court held that the search of a rental car—conducted while the defendant was arrested 100–150 feet away and already handcuffed—was not a valid search incident to arrest. Edwards limited the scope of *New York v. Belton*, 453 U.S. 454 (1981), holding that Belton does not permit warrantless vehicle searches when the arrestee is not in close proximity to the vehicle at the time of the search.

Despite these clear precedents, Bezner dismissed Williams' suggestion to investigate or challenge the seizure. Her refusal to explore these issues was not the result of any strategic choice grounded in legal research or fact development—it stemmed from her fundamental failure to conduct any meaningful investigation from the outset of the case. As a result, no coherent defense strategy was ever formulated, and Williams was denied even the most basic pretrial litigation aimed at safeguarding his constitutional rights.

The record is unambiguous. A review of the U.S. District Court docket reveals that Bezner filed no substantive pretrial motions on Williams' behalf prior to trial. By foregoing this critical stage of litigation, she forfeited a key opportunity to scrutinize the prosecution's evidence and test the validity of its case. Her failure is even more

10

egregious considering she did not seek to obtain or review potentially exculpatory data from the seized cellphone, which reportedly contained video footage of Williams handling large sums of cash prior to any of the alleged robberies. This evidence could have refuted the government's narrative that Williams only possessed money after the offenses—yet it was never explored, much less presented.

Pretrial motions are essential tools for evaluating the strength of the government's case, narrowing legal issues, and constructing a viable defense strategy. Bezner's failure to utilize these tools left Williams uninformed, unprotected, and unprepared to make critical decisions regarding trial or plea. Without the benefit of informed counsel, he was deprived of the meaningful advocacy guaranteed under the Sixth Amendment.

Moreover, Bezner failed to advise Williams about the relevant circumstances and potential consequences of entering a plea versus proceeding to trial. Her omissions undermined his ability to make a knowing, intelligent, and voluntary choice regarding his defense. By entering trial without any pretrial advocacy, legal challenges, or defense strategy, Williams stood defenseless in a system that constitutionally mandates the assistance of competent and diligent counsel.

The duty to investigate is not discretionary. Defense counsel is required to conduct a "reasonably substantial, independent investigation." *Neal v. Puckett*, 239

11

F.3d 683, 688 (5ᵗʰ Cir. 2001) (quoting *Baldwin v. Maggio*, 704 F.2d 1325, 1332–33 (5ᵗʰ

Cir. 1983)). The Supreme Court has set forth the governing standard in *Strickland v.*

*Washington*, 466 U.S. 668, 690–91 (1984):

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-91.

In this case, Bezner did neither. She failed to perform even a minimal investigation of the facts or law. She did not review the government's evidence, did not request forensic analysis of the seized phone, and failed to interview or subpoena any of the government's key witnesses, whose anticipated testimony could have been challenged or rebutted at trial. She did not consult with experts or investigators, nor did she identify any alternative theories of defense. In sum, her representation fell well below the standard of professional competence required under the Sixth Amendment.

      a.     <u>Failure to Investigate the Content of the Seized Cellphone</u>

An attorney's duty to conduct a reasonable investigation is a core component of

12

the Sixth Amendment right to effective assistance of counsel. As the Supreme Court held in *Strickland v. Washington*, 466 U.S. 668, 691 (1984), defense counsel must either "make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." Where counsel's failure stems not from strategy but from neglect or oversight, it constitutes constitutionally deficient performance—particularly when the unexamined evidence could have had a significant impact on the outcome of trial.

In Williams' case, defense counsel Bezner failed to take even minimal investigative steps regarding a seized cellphone that was pivotal to the government's theory of the case. The prosecution introduced the phone into evidence to suggest that Williams only came into possession of significant cash after the robberies—implying that the robberies were the source of his funds. However, according to Williams, the phone contained video evidence showing him handling large sums of money prior to the alleged offenses. This potentially exculpatory evidence directly contradicted the government's narrative about motive and timing.

Despite the critical importance of the phone, Bezner never requested to inspect its contents, filed no motion for discovery or suppression, and did not challenge the government's characterization of the phone's data. This failure was not rooted in trial strategy—it was the result of sheer inattention and inadequate preparation.

13

The resulting prejudice is evident under *Strickland*'s second prong. Had the defense been able to present video evidence of Williams with cash before the dates of the robberies, it would have directly undermined the prosecution's claim that the robberies were his only source of money. In a case largely built on circumstantial evidence and inferences of motive, such a counter-narrative could have significantly altered the jury's view.

As the Seventh Circuit explained in *Washington v. Smith*, 219 F.3d 620, 634 (7th Cir. 2000), prejudice exists where counsel's failure to investigate "could have changed the outcome of the trial" and where "the evidence the attorney failed to uncover was central to the only plausible defense."

Because of Bezner's failure to investigate or present this key evidence, the jury was left with only the government's unchallenged version of the cellphone's relevance. Williams was deprived of the opportunity to present a meaningful defense—one that could have raised reasonable doubt and altered the trial's outcome.

       b.    <u>Failure to Addresses the Judge to Recuse Themselves Due to Conflicts of Interest</u>

The Constitution guarantees every defendant the right to a fair and impartial trial. This foundational principle is reinforced by the *Code of Conduct for United States Judges*. Canon 2 of that Code provides:

> "A judge should avoid impropriety and the appearance of

impropriety in all activities; (A) Respect for law — a judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Canon 3A(3) further provides:

"A judge shall require order and decorum in proceedings before the judge."

These provisions make clear that judges are not only required to remain impartial but must also avoid any behavior that might reasonably give the appearance of partiality or impropriety.

In Williams' case, the presiding judge repeatedly referred to a key witness, Handelman, by HER first name, Alexis, and told her to call HIM, "Jack," and made personal, supportive statements, including: assuring her that she was "not alone," expressing empathy for the emotional difficulty of testifying, and telling her they could "be strong together." He further stated he had testified himself in the past and understood the challenge, implicitly aligning himself with the witness and her emotional experience.

These comments went beyond maintaining courtroom decorum and crossed into personal advocacy. To Williams, the judge's demeanor created the appearance of a close, sympathetic relationship with the witness—who, importantly, was a confessed co-conspirator testifying against the defendant. Williams reasonably perceived these

15

statements as an improper attempt to emotionally encourage or influence the witness to testify in favor of the prosecution.

Williams asked his attorney, Bezner, to object to the judge's conduct and request recusal based on this apparent partiality. However, Bezner failed to act, either by lodging an objection, preserving the issue for appeal, or filing a motion for recusal under 28 U.S.C. § 455.

The judge's statements suggested he viewed Handelman not as a participant in the charged crimes but as someone he needed to support and protect—effectively casting her in the role of a victim rather than a co-defendant. This undermined the appearance of neutrality and created a judicial atmosphere that favored the government's narrative.

By failing to challenge the judge's conduct, counsel allowed proceedings to continue under circumstances that cast serious doubt on the impartiality of the tribunal. This failure further eroded Williams' right to due process and a fair trial before an unbiased judge.

c.      Failure to Challenge the Evidence Collection

In this case, law enforcement introduced a box of latex gloves allegedly handled by Williams from an O'Reilly Auto Parts store. The purchase was supported solely by the identification of an employee, Julie Price, who claimed she witnessed Williams buy

16

the gloves. Investigators further claimed that a forensic examiner was eventually able to lift a latent fingerprint from the box of gloves—on the third attempt—after two prior inconclusive efforts.

Despite the centrality of this evidence to the prosecution's case, defense counsel failed to challenge its admissibility or reliability. No motion to suppress was filed. There was no inquiry into the chain of custody for the gloves, which left open the possibility of contamination or mishandling. Nor was there any meaningful cross-examination regarding the forensic examiner's methodology, qualifications, or the scientific basis for declaring a match on the third attempt after initial failures.

This lack of scrutiny was a significant oversight. It is well-established that fingerprint analysis, especially from soft or pliable surfaces like latex, can be prone to error and often requires expert validation. Additionally, the delayed and inconsistent identification of the print raises questions about reliability that should have been presented to the court and the jury.

Competent defense counsel would have raised these concerns through a pretrial motion to suppress under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), or objected at trial under Federal Rules of Evidence 702 and 403. Counsel's failure to do so allowed potentially flawed evidence to go unchallenged and directly contributed to the strength of the government's case.

17

d. Failure to Seek Independent Investigative Resources

Bezner neglected to file a motion seeking funds for a private investigator as authorized under 18 U.S.C. § 3006A(e). The Seventh Circuit has repeatedly emphasized the importance of obtaining such investigative resources when necessary to effectively challenge the government's case. See *United States v. Bustamante*, 493 F.3d 879, 893 (7th Cir. 2007) ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.").

Instead of pursuing independent fact-finding, Bezner confined her efforts to reviewing the government's case file and conferring with the prosecutor. She failed to undertake any independent investigation to verify, corroborate, or challenge the government's evidence. This lack of initiative and failure to utilize available resources deprived Williams of a critical opportunity to develop a meaningful defense.

e. Prejudice to Williams

Counsel's failure to conduct a meaningful investigation prejudiced Williams by denying him a viable defense and allowing the government's case to go unchallenged. As the Supreme Court has emphasized, "counsel's failure to investigate a potential defense strategy constitutes deficient performance where that failure is not based on reasonable professional judgment." *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

f. Had Bezner conducted a thorough investigation

18

A comprehensive investigation could have uncovered additional evidence to challenge the claim that Williams used the gloves allegedly linked to the robberies. This would have included interviewing potential witnesses and critically examining the government's witnesses to develop a more effective defense strategy, potentially reducing Williams' sentencing exposure under the Sentencing Guidelines. Scrutinizing prior statements by witnesses and authorities could have undermined the prosecution's sentencing recommendation, which significantly increased his sentence. Independent evidence might have revealed inconsistencies or contradictions in the government's case over time, further weakening its position.

Bezner's failure to conduct this investigation left Williams unprepared to effectively challenge the prosecution, forcing him to proceed to trial without a clear understanding or meaningful defense. Both the Supreme Court and the Seventh Circuit recognize that prejudice arises when counsel's omissions undermine the reliability of the trial's outcome. See *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Paters v. United States*, 159 F.3d 1043 (7th Cir. 1998).

In light of these facts, Bezner's failure to conduct an adequate and independent pretrial investigation constituted ineffective assistance of counsel under *Strickland*. This deficiency deprived Williams of the ability to make informed decisions about his defense and compromised the fairness of the proceedings. Accordingly, Williams'

19

conviction and sentence should be vacated, and he should be granted relief to protect his constitutional rights.

### III. Trial Counsel's Failure To: (1) Inform Williams of His Strategy, Any Affirmative Defenses and His Theory of His Defense; (2) Subpoena and Call Defense Witnesses on Williams' Behalf to Help Prove His Case

In this case, Williams was never provided with a clear explanation of trial strategy or how his counsel intended to challenge the government's case. Furthermore, there were several critical aspects of the trial that Bezner either failed to raise or neglected altogether, including:

- Failure to Challenge the Government's Witnesses' Statement Inconsistencies. Many of the government's witnesses made statements at trial that contradicted their earlier versions, but these contradictions were never effectively challenged by the defense.

  a. Julie Price ("Price"): Price, who has not worked at O'Reilly's Auto Parts since 2013, initially stated that she sold a box of gloves to a tall, heavyset man—identified as Williams—during an interaction lasting approximately 3 to 5 minutes. She recalled the conversation and the gloves sold. However, in a later media interview, Price identified the male robber but expressed uncertainty about how law enforcement obtained the gloves. She also said she handed an officer a plastic bag to collect the gloves, raising serious questions about the chain of custody and reliability of the evidence.

  b. Officer Daniel Savera ("Sovero"): Officer Sovero testified that he retrieved the box of gloves using a paper evidence bag from his squad car. This account contradicts his 2019

20

statement, where he denied receiving a plastic bag from Price, further undermining the reliability of evidence handling.

c.   <u>Debra Lucas ("Lucas")</u>: Lucas received the box of gloves from Officer Savera; however, the chain of custody receipt failed to specify the exact item transferred, and the receipt was signed by an unidentified person, casting doubt on the evidence's integrity.

d.   <u>James Wheaton ("Wheaton")</u>: Serving as the firearms expert in 2018, Wheaton claimed that all firearm-related discussions were directed to Jessica, which was false. Williams had informed Wheaton he did not possess a Firearm Owner's Identification (FOID) card and neither asked Jessica about any firearm nor handled any gun in the store that day.

Despite these material inconsistencies, defense counsel Bezner failed to object, request limiting or curative instructions, or take any steps to impeach the witnesses or alert the jury to the unreliability of the government's evidence. Consequently, the prosecution was allowed to present a fractured and contradictory narrative to the jury without challenge—undermining the integrity of the adversarial process and violating Williams' Sixth Amendment right to effective assistance of counsel.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court made clear that prejudice arises when counsel's failures undermine confidence in the trial's outcome. Failure to object to inconsistent testimony—especially when central to the prosecution's case—can constitute ineffective assistance. Courts consistently hold that

21

defense counsel has a duty to investigate and challenge inconsistent or perjured testimony, particularly when it forms the basis for conviction.

The Seventh Circuit has affirmed this principle in *Paters v. United States*, 159 F.3d 1043 (7th Cir. 1998), holding that counsel's failure to meaningfully test the prosecution's case renders the process presumptively unreliable. The court stated, "When a defense attorney fails to subject the prosecution's case to meaningful adversarial testing, the process itself becomes presumptively unreliable."

Similarly, in *United States v. Agurs*, 427 U.S. 97 (1976),The Supreme Court recognized that presentation of false or misleading testimony—even if not intentional—violates due process when it may affect the jury's judgment. The defense has an affirmative duty to highlight and object to such discrepancies to prevent the jury from being misled by unreliable or evolving narratives.

The prosecution in Williams' case relied heavily on witnesses whose accounts changed between initial interviews and trial testimony. These discrepancies involved key issues such as identification, timelines, handling of evidence, and the defendant's alleged conduct. Yet, instead of confronting these contradictions through objection or cross-examination, Bezner allowed the government's case to proceed unchallenged, depriving the jury of the opportunity to assess the credibility and consistency of the prosecution's evidence.

22

Furthermore, in *Crivens v. Roth*, 172 F.3d 991 (7th Cir. 1999), the Seventh Circuit reversed a conviction where trial counsel failed to highlight contradictions in key witness statements that could have significantly affected the verdict, emphasizing that "the jury's assessment of credibility is paramount, and unchallenged inconsistencies can distort that assessment."

In conclusion, counsel's failure to object to or address the shifting narratives of the prosecution's witnesses constitutes a critical lapse in representation. These unchallenged inconsistencies cast substantial doubt on the reliability of the government's case and satisfy the prejudice standard under Strickland, as there is a reasonable probability that, had the jury been made aware of these contradictions, the verdict would have been different.

- <u>Failure to Challenge the Evidence</u>. In this case, the defense failed to effectively contest several critical pieces of prosecution evidence, including the box of latex gloves, the fingerprint evidence, and the Samsung Galaxy S7 cellphone seized from the vehicle. The record reveals inconsistencies that undermine the reliability and integrity of this evidence.

  First, the box of latex gloves was reportedly open when first received into evidence but appeared closed when later introduced at trial. This contradiction raises serious questions about possible tampering or improper handling, which could compromise the chain of custody's credibility. The Seventh Circuit has held that failure to challenge questionable evidentiary procedures or inconsistencies may constitute ineffective assistance of counsel, particularly when such issues remain unaddressed before the jury. See *Julian v. Bartley*, 495 F.3d 487 (7th Cir.

2007) (prejudice arises when defense fails to challenge unreliable physical evidence).

Second, the fingerprint evidence was derived only after multiple failed attempts to obtain a usable print. It was not until the third round of testing that a fingerprint was deemed suitable for comparison and subsequently attributed to Williams based on marked features. The reliability of this delayed and selective analysis should have been rigorously contested under *Kyles v. Whitley*, 514 U.S. 419 (1995), which underscores the government's duty to ensure a fair trial and prohibits suppression or misrepresentation of doubtful evidence affecting the verdict. Moreover, the defense's failure to consult or retain an independent fingerprint expert despite these ambiguities raises serious Sixth Amendment concerns under *Strickland v. Washington*, 466 U.S. 668 (1984), and *United States v. Hall*, 212 F.3d 1016 (7th Cir. 2000), which establish that counsel's neglect to scrutinize critical forensic evidence constitutes ineffective assistance.

Finally, Special Agent Monte Keiper arrested Williams and conducted a warrantless search of a Ford Fusion, seizing the Samsung Galaxy S7 cellphone. According to the agent's report, the phone was found on the passenger seat; however, subsequent defense observations indicate it was actually located on the center armrest—further highlighting inconsistencies in the government's account. This warrantless search and seizure, absent exigent circumstances or consent, likely violated Williams' Fourth Amendment rights, as established in *Riley v. California*, 573 U.S. 373 (2014), where the Supreme Court ruled that a warrant is required before searching digital data on a seized cellphone. Additionally, *United States v. Garcia*, 997 F.3d 1244 (7th Cir. 2021), reaffirmed that vehicle searches incident to arrest must be narrowly tailored to satisfy constitutional standards.

In sum, these evidentiary inconsistencies, combined with the failure to challenge the handling of physical evidence, the reliability of forensic testing, and the constitutionality of the warrantless cellphone seizure, deprived Williams of a fair and reliable adjudication. These failures, both individually and cumulatively, meet the *Strickland* prejudice standard by undermining confidence in the trial's outcome.

24

Bezner's representation fell below constitutional standards, depriving Williams of effective assistance of counsel. These cumulative failures constitute ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984). Even if each error individually did not cause prejudice, their combined effect satisfies the *Strickland* standard. See *Daniels v. United States*, 588 F.3d 835, 862 (11th Cir. 2009).

Additionally, Bezner failed to advise Williams of his sentencing exposure and neglected to request case-specific jury instructions, thereby leaving the jury without proper legal guidance. This further violated Williams' Sixth Amendment rights and due process. See *Faretta v. California*, 422 U.S. 806, 807 (1975).

Accordingly, Williams' convictions and sentence should be vacated, and he should be allowed to reenter a plea with effective counsel.

**IV. Appellate Counsel's Failure To: (1) Communicate and Keep Williams Informed of the Issues He Intended to Raise on Appeal; (2) Allow Williams to Participate in His Appeal and to Include Additional Issues; and (3) Raise Stronger Issues Than the Issues Raised on Appeal by Counsel Deprived Williams of Effective Assistance of Appellate Counsel, and a Fair and Meaningful Appellate Review.**

Appellate counsel Kent R. Carlson ("Carlson") rendered constitutionally ineffective assistance by disregarding Williams' clear and repeated requests to raise multiple meritorious appellate claims. This failure deprived Williams of meaningful participation in his own defense and violated the standards set forth in *Strickland v.*

*Washington,* 466 U.S. 668 (1984), which require counsel to act with reasonable competence and diligence at every stage of litigation.

It is well-established that appellate counsel has a duty to consult with the defendant regarding issues the defendant identifies as significant, especially when those issues are non-frivolous or potentially stronger than those actually raised. See *Scott v. Hepp*, No. 22-1314 (7th Cir. 2023). Instead of engaging with Williams' concerns, Carlson advised him to voluntarily dismiss his appeal, warning that an adverse ruling could undermine future claims under 28 U.S.C. § 2255.

However, Carlson failed to inform Williams that the deadline to file a § 2255 motion was November 2024, nor did he offer assistance in preparing such a motion. Instead, he indicated Williams would have to file pro se, without legal counsel. Further compounding these failures, Carlson neglected to inform Williams of his right to petition the United States Supreme Court for certiorari, thereby obstructing his access to the full appellate process.

Together, these omissions reflect a breakdown in the attorney-client relationship, amounting to ineffective assistance under both *Strickland* and *Roe v. Flores-Ortega,* 528 U.S. 470 (2000), which require counsel to consult with the defendant about an appeal when non-frivolous grounds exist or when the defendant expresses interest in pursuing further review. The Seventh Circuit has held that failure to follow a

26

defendant's instruction to seek post-conviction relief may constitute ineffective assistance. See *Thomas v. O'Leary*, 856 F.2d 1011 (7th Cir. 1988).    Moreover, appellate counsel's failure to raise stronger claims in favor of weaker ones was objectively unreasonable. See *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Lordi v. Ishee*, 384 F.3d 189 (6th Cir. 2004); *Bowen v. Foltz*, 763 F.2d 191, 195 (6th Cir. 1985). Prejudice is established because there is a reasonable probability that, had these issues been raised—particularly those concerning witness credibility and critical evidence such as fingerprint and cellphone data—Williams' appeal would have succeeded. See *Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006).

Separately, trial counsel Carlson entered into a stipulation without Williams' informed consent. Such waivers must be knowing and voluntary. See *United States v. Ardley*, 242 F.3d 989 (11th Cir. 2001). Williams' lack of understanding invalidates the stipulation.

Accordingly, Williams' sentence should be vacated and the case remanded for resentencing.

## V. <u>CONCLUSION</u>

For the reasons stated above, Williams was denied his constitutional right to effective assistance of counsel during both the pretrial and trial stages. Counsel's failure to object to inaccuracies during trial and to advocate for a fair sentence constitutes

deficient performance under *Strickland* and its progeny. These failures prejudiced Williams, resulting in a significantly harsher sentence.

The Supreme Court has emphasized that effective representation is essential at all critical stages, including plea negotiations and sentencing. See *Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 134 (2012). Had counsel performed adequately, there is a reasonable probability that Williams would have received a substantially reduced sentence.

Accordingly, Williams respectfully requests that this Court grant his § 2255 motion, vacate his conviction and sentence, and provide appropriate relief, such as resentencing or an evidentiary hearing to evaluate counsel's deficiencies and their prejudicial impact.

Respectfully submitted,

Dated: November 25, 2025

JAMES D. WILLIAMS
REG. NO. 52171-424
USP CANAAN
U.S. PENITENTIARY
P.O. BOX 300
WAYMART, PA 18472
*Appearing Pro Se*

28

Civil number 1:25-CV-08476

Criminal number 1:18-cr-00339-1

Hon. John Robert Blakey

James Williams 52198-424
U.S.P Canaan
P.O. Box 300
Waymart PA, 18472



RECEIVED

DEC 0 2 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT



12/02/2025-13

MR. Thomas G. Bruton
Clerk of Court
Northern District of Illinois
Easter Division
219 S. Dearborn St.
Chicago, IL. 60604

LEGAL
MAIL

THIS CORRESPONDENCE IS FROM AN INMATE
CURRENTLY IN THE CUSTODY OF
THE FEDERAL BUREAU OF PRISONS

THIS CORRESPONDENCE IS FROM AN INMATE
CURRENTLY IN THE CUSTODY OF
THE FEDERAL BUREAU OF PRISONS

LEGAL

MAIL